Good morning, Your Honors. Michael Lovetter and my colleague, Yu-Chen Han, on behalf of Plaintiff Appellant Jason Rawls. May I proceed? And again, thank you. I believe you're doing this pro bono? Yes, Your Honor. Thanks again for stepping up. Really appreciate it. Yes, Your Honor. Your Honors, Mr. Rawls joined the U.S. Army in the year 2000. Per the military's own doctors, Mr. Rawls experienced 100% service-related schizophrenia while he was serving in the U.S. Army. As a result of that schizophrenia, Mr. Rawls went AWOL. To avoid prosecution, he left the Army in the year 2001 with an other-than-honorable discharge. This wrongly characterized discharge continues to harm Mr. Rawls to this day in two ways, at least. First, he cannot obtain his full veteran's benefits. Secondly, he is required to explain his discharge to the public, including to potential employers. Mr. Rawls has repeatedly sought to correct his military record and upgrade his discharge to honorable to accurately reflect his military service. The latest effort was a request filed in 2018 with the Army Board for reconsideration, which the Army denied. This lawsuit challenges that denial. We filed this lawsuit in 2023 within the six-year statute of limitations under the Administrative Procedures Act. Well, it was within six years of the denial of the recon. Yes, Your Honors, that's correct. As Your Honors are aware, the district court disagreed. It held that the 2018 request itself was untimely, even though the Army did not hold it to be untimely. Well, the Army said it looks like it's untimely, but we're going to talk about the merits anyway. Correct, Your Honor, that's right. And under its own regulations, if it was untimely, it was to send it back and tell them that it wasn't. So, accepting the 2018, considering the 2018 decision is untimely, the district court looked to the 2015 decision, which was a previous reconsideration attempt, and started the six-year statute of limitations under the APA under that decision. Therefore, it dismissed the lawsuit as barred by the statute of limitations. This is incorrect for two reasons. First, the 2018 request was not untimely. Congress amended Section 1552 in 2016, which superseded Army regulations, creating a new right for veterans to present material not previously considered by an Army board at any time. But in order for that argument to succeed, the statute would have had to have been retroactive. Your Honor, we don't agree with that. Why not? Section 1552 essentially created a new right. In 2016, it stated that members of the military, veterans, appealing to the board, may proceed with new evidence not previously presented to or considered by a board, and the board shall consider that request no matter when filed. Mr. Rawls filed the 2018 reconsideration request after the amendment of the statute. That's not a retroactive application. This new right was created by Congress. They had the right to do that. It superseded the regulation. So, in your view, that statute not only applied to your client, whose denial was in 2015, it would have applied to somebody whose denial was in 1985? If they applied for a request for reconsideration, yes. And it would bring back what had happened in 1985 or 1975 or 1965? It would create a new right for them to file a request for reconsideration post-statute. I don't think it would allow them to reopen a request filed in 1985 without a new request based on new information. But, yes, and in announcing this policy, the military was clear. They issued the CURTA memorandum in 2017, which issued a clarifying guidance for this statute. And in announcing that policy, the Department of Defense issued a press release that invited veterans from any era to resubmit reconsideration. The Army understood what this meant. And, in fact, in that press release and in the memo, it has provisions for veterans seeking reconsideration within the past 15 years or previously to past 50. So they understood. If I understand your argument correctly, even if we agreed with you as to the applicability of 1552, there would still have to be what would be considered new information in the filing. That's correct, Your Honor. I don't believe there's any dispute. At this stage of the proceedings, I don't believe there's any dispute that there's new material in the file. Well, I mean, there's no dispute that you call it new material. Correct, Your Honor. And the district court didn't rise to that issue. But we're looking at this de novo. That's correct, Your Honor. But I think the new material, I think the Army doesn't dispute that this is new material. The application in 2018 specifically included new material, including that Mr. Rawls was treated at Camp Pendleton for schizophrenia while he was listed in the Army. That's at ER 144 and 151. Also, that his family made multiple attempts to contact the Army and inform them of his condition before he was discharged. That's at ER 145. And the Army, in its 2020 decision, in the record of decision, confirms that Mr. Rawls submitted this new material. It doesn't pass judgment as to whether it's opinion if that's new material or not, but it makes it clear in the record that this material was submitted and was considered by the board in 2020 when it reached its decision, and that's ER 129. So, counsel, if I could ask about that language, no matter when filed.  We looked to see if any other statute had ever used that language before in terms of a statute of limitations, and we couldn't find any other examples of that. I was curious, in your work on this case, have you seen that language used in any other statute? I agree, Your Honor. This is unusual. I think that's good for your client that it's unusual, but I'm just trying to – is it unusual? I do, and I think it is unusual. And we actually tried to delve into legislative history to see what was the genesis of that. We couldn't find anything. In its opposition, both sides looked to other circuits to analogize as to how this case – there's the Avery decision, which was an ND Cal decision, which in turn referenced the Davis decision, which was a Sixth Circuit, and the Green court, which was a Third Circuit decision. And in the Green case, they considered facts. Basically, on all fours with hours, where an applicant submitted an application where there was new information – now, this is pre-1552, understand that – with new information, and the district court said that that restarted the statute of limitations under the APA. Now, I have no case or legislative history that links those two together, but it certainly is possible that this new legislation was in some way in reverence to that, that they opened this up to restarting, to allowing them to consider it no matter when filed in order to redress past wrongs. I think it's a little bit of an unusual situation in that these discharges reflect circumstances that change over time, different conditions about what qualifies and disqualifies someone from military service, and those change over time, and it's plausible – I have no direct citation – that that is a reference to those changing norms. But I agree with Your Honor, this is not language we've seen otherwise, but it is clear from the plain reading of the statute that this says no matter when filed. There are no temporal restrictions on that. But the limiting principle, you would say, is – but it still has to be in the context of a motion for reconsideration. It can't just simply be filing the same thing over and over again. You have to actually say, no, here's why this is different. Correct, and if we look at some of these previous decisions, we have seen evidence where the military board has looked at this and said, this is new material, this is not new material. It's not carte blanche, but in the context where you submit new materials for the board to consider, it should consider it. Now, independently, if the court does not understand 1552 to grant this unlimited time right, Mr. Rawls' application is still timely under the ethical tolling argument. Mr. Rawls submitted his request in 2018. While the 60-year statute of limitation was still open, even under the 2015 decision that the district court looked at, that statute is equitably told while the Army considered his request and while Mr. Rawls waited for that decision. If the rule is adopted that the government advocates and the district court seems to have adopted, it would require Mr. Rawls to proceed in two forms. He has an application he submitted in 2018, which the Army accepted, did not return to him, and under this rule, he would have then had to file a district court challenge while this is pending. That clearly conflicts with the APA's requirement that he exhaust its administrative remedies. As we mentioned, under 1552, this new right was created by Congress, clearly without... So if I understand what you're saying correctly, is that seriatim recon motions would toll the statute of limitations forever? If it was based on new material not previously presented or considered by the board, that seems to be correct. So you could just keep filing them, but aren't you saying also that as long as it's under consideration, it tolls it? If it's under consideration by the military, I don't think in this case, again, this is an equitable tolling argument. I don't think that's a carte blanche rule that that necessarily would toll it, but in this case, the Army's regulations state that if an application is submitted and the Army does not consider it untimely, they are to return it without action and, quote, advise that the next remedy is an appeal to a court of appropriate jurisdiction. If you look at the 2018 request decided in 2020, not communicated to Mr. Rowles until 2021, that states this is a final action, we will not consider it. And even in that letter, this is at ER 129, it specifically states we will not reconsider this request unless you present us with new material or information not considered. So the Army acknowledges the possibility that this could be reopened again. Do you want to reserve some time? Yes, Your Honor. All right, thank you very much. Good morning, Your Honor. May it please the court, this is United States Attorney Randy Shea for the Secretary of the Army. So I'd just like to respond to a couple of the points made by Mr. Rowles' counsel. The first is to retroactivity. The counsel states that, and in their briefing, state that they're not seeking a retroactive application of Section 1552, but in effect we believe that what they're asking for is a retroactive application because by the time they submitted their reconsideration application in 2018, the one-year period to file a reconsideration under the old regulations had already passed. The decision came down in 2015, and by the old regulation, it would have expired by 2016. So pursuant to Chang v. United States, which the district court cited, and under Martin v. Hedricks, which is a Supreme Court case, that basically imposed a new obligation or new burden upon the government, in which case that would be a retroactive application. Now, the second point the counsel pointed out was that they had new information. So the government disputes that. In his 2018 application, the only new information that we're aware of is really the CURTA memorandum and the press release that had been appended with that. Other than that, everything else is the same. Mr. Rowles here had been aware of his schizophrenia diagnosis essentially since he'd been discharged in 2001. His application before the ADRB, the Army Discharge Review Board, in 2002, made note of his schizophrenia, in which the Army Discharge Review Board considered. Additionally, in 2015, essentially the same records from early on, from 2002, 2003, 2004, were presented before the Army Board for Correction of Military Records. And again, it was the same issue of his schizophrenia diagnosis. So in that sense, by the time we get to 2018, the board, the Army, is aware of his schizophrenia that had been ongoing, or rather that had been diagnosed essentially 20 years prior. And other than the new guidance from the Department of Defense, we're really not aware of any new information. So these details about his treatment at Camp Pendleton and his family's attempt to contact, in your view, those aren't new information? That's correct, Your Honor. Factually, with respect to this case, I believe all that occurred 15 years ago. In 2005, if I'm not mistaken, there were letters from, I believe, Mr. Rowles' grandfather, his grandmother, and other treating providers. And this all occurred even before the, certainly before the 2015 application, before the ABCMR. So in the government's view, if we were to get past the retroactivity argument and just look at new information, in the government's view, the only thing we should be looking at is the CURTA memorandum and the press release. In the government's view, that doesn't count as new information. Correct, Your Honor. Certainly, Mr. Rowles, I mean, there's no new evidence with respect to his own personal circumstances or his condition. You know, this is just, as the government characterizes it, clarifying guidance for the board. So I think you were going there, but can you tell us why, in the government's view, the CURTA memorandum is not new information that would affect these proceedings? Yes, Your Honor. So the CURTA memorandum doesn't change anything about Mr. Rowles' underlying circumstances or his condition. His, you know, he's seeking an upgrade based on his schizophrenia diagnosis or his condition. None of that has changed as a result of the CURTA memorandum. But it does change the context of the case in the sense that it's now commanding a liberal treatment of this information. Isn't that correct? That's correct, Your Honor. Now, the board, the ABCMR, in its 2015 decision, does state that it has made liberal consideration of his medical condition in its decision. And certainly also the ADRB, in its 2004 decision, also upgraded his discharge from an other-than-honorable to a general discharge based on liberal consideration of his diagnosis. Counsel, let me ask you one thing that puzzles me about this case. It's the 2021 denial of reconsideration. Yes, Your Honor. Now, in that denial, if I'm correct, they did reach the merits, correct? Yes, they did, Your Honor. But they did not say, well, hold on a second, there's a statute of limitations and that was one year under the reg, and there's none of that. So what do we do with that? So the government's position is that we haven't waived our statute of limitations argument there. In essence, what I think it would really be an equitable estoppel argument, I think, Your Honor, which I don't believe that the appellant had raised here. But really, I think if we were to consider it under an equitable estoppel framework, there would have to be, well, one, reasonable and actual reliance, and also there'd have to be some sort of indication of really fraud or misrepresentation on the part of the government, which there isn't here. No, no, no, and I wouldn't mean to suggest that. I'm just trying to understand if it's so clear that this was late, then why didn't they say in May 2021 this is late? That was a choice made by the ABCMR. Right, well, I guess that's what I'm saying, I mean, because we're trying to understand this kind of tricky question. I mean, I appreciate both the briefing and argument on both sides. This has been a very well-argued case. But this is the part that puzzles me the most, is there was an opportunity for the board, who I would think would know this area of the law better than anybody on the planet, and they didn't say what you're saying now. It doesn't mean what you're saying now is wrong. I'm just trying to – and I know you weren't part of that decision. You never heard of this case back in May 2021. But I'm just trying to understand, like, that seems to me that was the time to say, well, hold on a second, it's a one-year deal under the reg, this 1552 thing. It doesn't apply in this situation. But they actually cite 1552 and then go to the merits, which is kind of what they're telling us to do right now. So do we just pretend that that's not part of the record? I mean, or you're saying you're not bound by it. That's right, Your Honor. So, I mean, I certainly understand, yes, they did consider it, consider the merits. But at the same time, though, Mr. Rawls, his claim accrued in 2015. He could have filed suit at that very moment. He didn't have to file a reconsideration request. In fact, I mean, he could have filed a suit before the district court in 2015, 2016, any time before 2018. I mean, in terms of why they didn't just reject it outright, that I don't have an answer to. But you would agree, and again, I'm not – you weren't there when the decision was made. But it would be better for your side, I guess what I would say, is if they had said, no, this is late. I don't want to put you on the spot. I'll say it this way. They could have said that, right? That's right, Your Honor. They could have said that, and they didn't. That's correct. And then your question is, is what do we do with the fact that they didn't? Yes, Your Honor. And you're saying it's not the end of the world, and they are going to say it's the end of the world. Right, Your Honor. I mean, what – again, we're just going to go – I mean, I would go back to 2015. And again, Mr. Rawls, his counsel was aware that he could have filed suit at that very time. I mean, part of the government's argument is, in response to Judge Owens' question, I take it is that the statute of limitations expired on a particular date, and what they said in 2021 can't affect the fact that the statute had run. Correct. All right, so in terms of – well, I mean, I guess there are two statutes at issue here. First of all, 1552, whether or not that's retroactive, we take the position that what they're seeking is retroactive. That's one statute. And the other being 3028 U.S.C. 2401A, the six-year statute of limitations to file suit in district court. So we cited to Avery, as which that cited to Davis. And I think that there's a – it's a district court case, but I think, well, one, it's the only – at the time, the only case addressed within the Ninth Circuit on that issue. Now, I think Avery does a good job of detailing the – kind of the pros and cons of both approaches, the one by Davis and the one by Green. And I think Avery kind of discusses convincingly why the Davis approach is preferable to that in Green because there are certain pitfalls under the Green approach that is discussed in Avery. And with respect to the equitable tolling argument raised by the appellant, we would argue that under Supreme Court jurisprudence, Mr. Rawls would have to be pursuing the claim diligently and also that there has to have an extraordinary circumstance that stood in his way to – essentially to filing suit. Now, I would submit that there is not any sort of extraordinary circumstance that stood in his way, as we pointed out in the briefing. The CURTA memorandum may very well have incentivized Mr. Rawls to apply for relief, but that's – nothing was impeding him from doing so. With that, if there are no further questions from the court – Thank you. All right. Thank you, counsel, very much. Thank you, Your Honor. Your Honors, I think you have accurately deduced the conundrum at the heart of this case. Mr. Rawls filed his request in 2018. The Army considered it. They did not return it. And now they're saying – throw up their hands and say you should have filed suit. Mr. Shea is correct. The statute of limitations did proceed from 2015. In fact, that six-year statute of limitations would have expired in April of 2021 after Mr. Rawls submitted his request in 2018. Under this rule, what they're saying is you submitted this new request in 2018, the Army accepted it, but at the same time you're supposed to just file your suit in district court to challenge the 2015 acceptance? Again, that's expecting Mr. Rawls to proceed in two forms simultaneously. Again, the APA requires him to exhaust his administrative remedies. He certainly is entitled, again, under the doctrine of equitable tolling, to assume that the military had taken this up and they were going to consider this and issue a decision. I think that's clear. Addressing the retroactivity point, I think we've covered this. It's not retroactive. It simply says no matter when filed, this new request was filed in 2018. It postdates the statute. It's not a retroactive application. We're not seeking to reopen a previous proceeding. This is an entirely new right under a new proceeding. The new evidence is clear in the record. Now, whether or not that constitutes new evidence is not before this court and also was not before the district court. If they wanted to raise that argument and challenge that this actually didn't constitute new evidence, that issue could have been litigated, but it was not. The court simply rejected it as untimely based on this conclusion that 1552 did not apply retroactively to the 2018 request, and therefore that request was untimely. As the panel noted, the Army did not say that. The district court just applied that standard. Looking at Avery and Green, for example, I think counsel is correct and those cases have some analogy to this case. None of them are binding on this tribunal, but that's exactly the point. In Avery, the Army returned the petition as untimely. That's exactly the point. They said this was untimely, and that triggered the right for him to file his district court case. In Green, also not binding on this circuit, however persuasive, the court said when you submit a petition based on new evidence, that restarts the statute of limitations. Now, considering the facts of this case where Mr. Rawls submitted a new application, it was accepted by the panel, by the board, and reconsidered on the merits, that either has to restart the statute of limitations or sufficiently be equitably told that he can then challenge that decision in court. My last point would be on the equitable tolling argument. We agree that Mr. Rawls should be diligently pursuing his rights. He was. He submitted his application in 2018. The Army accepted it, and that some extraordinary circumstances stood in his way. The Army's own regulations say if the panel is untimely, they're to return it and advise him to appeal. They didn't. They accepted this request and asked him to wait. He had no choice but to wait until he got the panel back, or he could have proceeded in the district court simultaneously. That clearly isn't tenable. It risks inconsistent results. It's a waste of resources. That can't be the rule that you have to preemptively pursue it in the district court. So last question for you, counsel, from me. So let's say you get what you want in this case. And I don't know if we had a conference on it, but let's say you get what you want. You have been on this case for a number of years. I understand you're going to stick with this thing. Yes, Your Honor. This is not just for appeal and then you're going back to paid work. No, Your Honor. We plan to pursue this again, yes. All right. Very well. Unless my colleagues have any other questions? No. All right. Thank you very much. Thank you to both counsel for your briefing and argument. Very helpful. And there's a lot of dates, a lot of things to keep track of the case. Yeah, and we're just going to take a – before a new counsel comes up, we're going to take a two-minute break. We'll be back in just a moment. We'll recess for a couple minutes. Thank you. Thank you.
judges: OWENS, BENNETT, THOMAS